UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| REPCENTRIC SOLUTIONS and MICHAEL KADLEC, | ) | Case No. 13 C 1819 |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff National Technology, Inc. (NTI) filed suit in the Circuit Court of Cook County, alleging breach of contract and fraud against defendants RepCentric Solutions ("RepCentric") and RepCentric's President, Michael Kadlec. The action was removed to this court pursuant to 28 U.S.C. §§ 1332 and 1441 on the basis of complete diversity among the parties. Now before the court is the defendants' motion to dismiss the case for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In the alternative, the defendants ask the court to find venue improper pursuant to Rule 12(b)(3) and either dismiss the action or transfer the proceedings to the District of Minnesota. For the following reasons, the motion is denied.

**I. BACKGROUND**

NTI is an Illinois corporation that manufactures and sells electronic circuit boards. Its principal place of business is in Rolling Meadows, Illinois. RepCentric is a Minnesota corporation involved in technical sales and marketing, with its principal place of business in Zimmerman, Minnesota. Its president, Kadlec, is a Minnesota resident.

According to the affidavits of NTI's CEO Roger Patel and President Robert Keisler, in March or April of 2012, Rob Coleman, a former NTI employee who was at the time employed by a different company from which NTI bought products, contacted Patel to inquire whether he would be interested in talking to Kadlec about furthering NTI's business. Patel indicated that he would, and Kadlec then called Patel regarding services that RepCentric could provide to expand NTI's business. According to Patel, the phone call was the first contact between RepCentric and NTI. RepCentric maintains that Coleman contacted RepCentric on behalf of NTI and told Kadlec that NTI was interested in retaining RepCentric.

On April 15, 2012, Kadlec sent Keisler an email and brochure. In the email, Kadlec offered to fly to Illinois to meet with NTI's executives. Kadlec met with Patel and Keisler at NTI's facility in Illinois on April 26, 2012, and made a presentation. NTI alleges that Kadlec and RepCentric represented to NTI that, by July 2012, it would establish a network of twelve NTI sales representatives nationally and increase NTI's business by $10,000.

RepCentric and NTI entered into a written agreement, which was signed at the NTI facility in Illinois. The agreement is on RepCentric stationery bearing its address in Minnesota. The agreement contains no choice-of-law or venue provisions. It refers to a "North American Expansion Program," which was designed to grow NTI's customer base throughout the United States and in several other countries. NTI was to pay RepCentric $7,000 per month for its services during the term of the agreement. The agreement stated that it could "be renewed on consecutive anniversary dates at the discretion of" NTI. (Compl. Ex. A (Agreement), ECF No. 1-1.) According to Keisler's affidavit, any new sales representatives would have to be interviewed in phone or in person by NTI's executives in Illinois, and they would have to be employed pursuant to agreements executed by NTI in Illinois. On or about July 26, 2012, two

representatives of RepCentric came to NTI's facility in Illinois to inspect the facility and to coordinate RepCentric's activities with NTI personnel.

NTI alleges that it purchased new manufacturing equipment and invested over $100,000 in the planned expansion. After executing the agreement, however, NTI learned that Kadlec was employed by one of its direct competitors in the circuit-board industry, a fact that had not been disclosed to NTI. RepCentric did not recruit any sales representatives on behalf of NTI. NTI terminated the agreement with RepCentric and sought return of monies paid to RepCentric. NTI alleges that RepCentric breached the agreement by failing to use its best efforts to recruit, deploy, and manage a sales network on behalf of NTI. Count I of the complaint alleges breach of contract against RepCentric. Count II alleges common-law fraud against RepCentric and Kadlec, based on fraudulent representations made by Kadlec to induce NTI to enter into the agreement with RepCentric.

## II. ANALYSIS

### A. Rule 12(b)(2)

When a defendant moves for dismissal under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *Citadel Grp., Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008). When no evidentiary hearing is held and the motion is decided on written materials submitted by the parties, as is the case here, the plaintiff must make only a prima facie case of personal jurisdiction. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id*. (internal citations and quotations omitted).

A federal court exercising diversity jurisdiction has personal jurisdiction only if a court of the state in which it sits would have such jurisdiction. *Philos Techs., Inc. v. Philos & D, Inc.*,

645 F.3d 851, 855 n.2 (7th Cir. 2011) (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997)). As the Seventh Circuit has explained, "[t]o determine whether personal jurisdiction exists," courts must "consider the Illinois long-arm statute, the Illinois constitution, and the federal constitution." *Citadel*, 536 F.3d at 760. Illinois extends personal jurisdiction to the extent allowed by the federal constitution, making the state and federal standards congruent *See id*. at 760-61. Therefore, this court need only determine "whether the exercise of personal jurisdiction would violate federal due process." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citing 735 Ill. Comp. Stat. 5/2–209(c)).

Personal jurisdiction may be general or specific. General jurisdiction is available when the defendant's contacts with the forum state are "continuous and systematic," even when the suit in question does not arise out of those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Specific jurisdiction is appropriate when the suit at issue arises out of the defendant's contacts with the forum. *Id*. at 414 & n.8. Here, NTI's primary argument is that the court has jurisdiction over both Kadlec and RepCentric under the specific jurisdiction theory, and the court therefore focuses on that theory, which is dispositive.

The Due Process Clause of the Fourteenth Amendment prevents a state from exercising specific jurisdiction over a defendant unless the defendant has had "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A state has an interest in providing its residents with a forum for redressing harms caused by an out-of-state actor that has "'purposefully avail[ed] itself of the privilege of conducting activities within the forum State,

4

thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The defendant's contacts with the forum state must be such that it could "reasonably anticipate being haled into court there." *Id*. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

The Seventh Circuit has identified "three essential requirements" for specific jurisdiction: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (internal citations omitted). The analysis is not "mechanical or quanititative." *Int'l Shoe*, 326 U.S. at 319. The ultimate question is "whether it is fundamentally fair to require [the defendant] to submit to the jurisdiction of the court *with respect to this litigation*." *Purdue Research Found.*, 338 F.3d at 780 (emphasis in original). The court addresses this question with respect to each defendant.

1. RepCentric

NTI contends that the injury giving rise to this litigation arises out of the contract between the parties, which RepCentric allegedly breached. A contract between a state resident and an out-of-state defendant does not automatically establish sufficient minimum contacts for specific jurisdiction. *Burger King*, 471 U.S. at 478. The court must consider the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id*. at 479. The "unilateral activity" of the in-state party, however, does not count. *Id*. at 474. When evaluating these factors, district courts typically

5

consider: (1) who initiated the transaction; (2) where the contract was executed; (3) where the performance of the contract was to take place; and (4) where the contract was negotiated. *Citadel*, 536 F.3d at 762. A defendant's solicitation of business from the plaintiff is a factor supporting jurisdiction. *See Madison Consulting Grp. v. South Carolina*, 752 F.2d 1193, 1203 (7th Cir. 1985). If the parties have engaged in a long-term business relationship, contacts that are "individually insignificant" can be "collectively important." *Citadel*, 536 F.3d at 764.

In this case, the written submissions demonstrate that RepCentric reached out to NTI based on a tip from Coleman, NTI's former employee. Although the defendants argue that it was NTI who solicited RepCentric through Coleman, the record shows that Coleman was not an NTI employee at the time he communicated with the parties. Even though Coleman helped to facilitate the relationship between the parties, the first direct communication between NTI and RepCentric occurred when Kadlec called Patel at NTI and attempted to persuade Patel to consider using RepCentric's services. RepCentric then sent informational materials to NTI and conducted a presentation at NTI's Illinois facility. RepCentric sent employees to Illinois on at least two occasions, and executed an agreement in Illinois. Nothing indicates that NTI ever visited RepCentric in Minnesota. The first two factors commonly considered in the specific jurisdiction analysis thus weigh in NTI's favor: the initiation of the transaction and the location where the contract was executed.

RepCentric argues that the contract was negotiated by phone and email while Kadlec was in California. As to the fourth factor, RepCentric argues that its performance of the contract was to be completed outside of Illinois, because it was engaged to conduct a national search for sales representatives. Resolving all factual disputes in NTI's favor, however, the court finds that the agreement contemplated an ongoing relationship between RepCentric and NTI. According to the

6

agreement, RepCentric was to "collaborate with the executive team," and "sustain tactical relationships" with NTI. (Agreement.) RepCentric was to develop a national—and international—network of salespersons, but that network would be intimately linked to NTI's operations in Illinois and its development would require regular communications between RepCentric and NTI's Illinois facility. Even when RepCentric's employees or contractors were not in Illinois, they would have to coordinate personnel activities via many phone calls and emails to NTI's personnel in Illinois. *See Heritage House Rests., Inc. v. Cont'l Funding Grp.*, 906 F.2d 276, 281 (7th Cir. 1990) ("Where a relationship is naturally based on telephone and mail contacts, these contacts can justify jurisdiction over a defendant."). Resolving disputed facts in NTI's favor, the intended outcome of the agreement—the creation of a sales network—also required the participation of NTI's executives in the hiring of the sales recruits.

The cases on which RepCentric relies to argue that it lacks sufficient minimum contacts with Illinois are distinguishable. For example, *Sungard Data Sys., Inc. v. Cent. Parking Corp.*, 214 F. Supp. 2d 879 (N.D. Ill. 2002), which RepCentric argues is "instructive," involved an agreement that was executed in Tennessee and a plaintiff who solicited the defendant's services in Tennessee. No agent of the defendant ever traveled to Illinois, and the contract was centered on business conducted by the plaintiff in Tennessee. *Id.* at 882-83. In the case at hand, the defendants' contacts with the forum state are much more significant.

Based on those contacts, the court concludes that RepCentric could have foreseen that it could be subject to jurisdiction in Illinois. The court further concludes that exercising jurisdiction in this matter does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. RepCentric is capable of defending this lawsuit in Chicago; it operates nationally and sent representatives to Illinois on at least two occasions.

Illinois also has an interest in providing a forum for NTI, as a resident corporation. *See Citadel*, 536 F.3d at 761.

    2. Kadlec

Kadlec is named in count II of the complaint, which alleges that he made false representations to induce NTI to enter into the agreement and failed to disclose that he was employed by a company in direct competition with NTI. The court concludes that these allegations are sufficient to support specific jurisdiction over Kadlec, because the alleged communications occurred at least in part while Kadlec was visiting NTI's Illinois facility, and were also made through emails and phone calls to NTI in Illinois. As with the breach-of contract claim, the alleged injury resulting from Kadlec's fraud stemmed from Kadlec's activities in or directed toward Illinois.

Kadlec briefly argues that the fiduciary shield doctrine prevents the court from exercising jurisdiction over him because he acted solely in his capacity as a corporate officer. He cites *Plastic Film Corporation of America, Inc. v. Unipac, Inc.*, 128 F. Supp. 2d 1143, 1146-47 (N.D. Ill. 2001), in which a district court dismissed a claim against a corporate officer pursuant to the doctrine. Many courts in this district, however, have found the fiduciary shield doctrine inapplicable as applied to high-ranking directors and officers of a corporation. *See, e.g.*, *Hundt v. DirectSat USA, LLC*, 2010 WL 1996590, at *6 (N.D. Ill. May 17, 2010) ("Courts in this district have consistently refused to apply the fiduciary shield doctrine to corporate presidents and CEOs, regardless of whether they are shareholders or not."). And even the case cited by Kadlec relied on the fact that the individual was not a corporate shareholder. *Plastic Film*, 128 F. Supp. 2d at 1146-47 ("The determinative factor is the individual's status as a shareholder, not merely as an officer or director."). Here, Kadlec is RepCentric's President. His affidavit states

that he is also its sole owner. (Def.'s Mot. to Dismiss Ex. A (Kadlec Decl.), ECF No. 13-1.) In light of his leadership role and ownership interest in RepCentric, the court finds that Kadlec is not entitled to the protection of the fiduciary shield doctrine. The court further concludes that NTI has established the court's jurisdiction over Kadlec.

**B. Rule 12(b)(3)**

Rule 12(b)(3) allows a party to move for dismissal of an action when it is filed in an improper venue. When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper. *See Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981); *Moore v. AT&T Latin America Corp.*, 177 F. Supp. 2d 785, 788 (N.D. Ill. 2001). Factual conflicts are resolved in favor of the plaintiff, and the court may draw reasonable inferences from those facts. *Id.* When venue is improper, the Court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

The defendants ask the court to dismiss or transfer this action pursuant to § 1406(a), arguing that it was filed in the wrong district. Section 1391(b) lists the bases for proper venue:

> (b) Venue in general.--A civil action may be brought in--
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

The defendants argue that venue is improper because they are not subject to this court's jurisdiction and because "a substantial part of the events or omissions giving rise to the claim" did not occur in the Northern District of Illinois. According to the defendants, the requirements of § 1391(b)(2) are not satisfied because RepCentric agreed to perform services nationwide, rather than in Illinois, and the contract was not negotiated in Illinois. NTI responds that venue is proper in this court for the same reasons that the court has personal jurisdiction over the defendants: the contract at issue was executed in Illinois and at least partially performed here, and the misrepresentations that form the basis for the fraud claim were made during a meeting at NTI's facility in Illinois. These events, NTI argues, make venue proper under § 1391(b)(2).

The court agrees with NTI. In deciding whether a substantial part of the events or omissions giving rise to a contract claim took place in a particular district, courts have examined where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred. *See, e.g.*, *MB Fin. Bank, N.A. v. Walker*, 741 F. Supp. 2d 912, 917 (N.D. Ill. 2010). Courts have also considered where meetings took place in order to consummate a contractual relationship. *See, e.g.*, *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1166 (N.D. Ill. 1995). Here, the contract was executed in Illinois, and related meetings took place in Illinois. Although venue might be proper in Minnesota, § 1391(b)(2) does not require the court to determine the best venue for an action, but merely whether "a substantial part of the events or omissions giving rise to the claim occurred" in the judicial district in which the action was brought. The court concludes that sufficient events and omissions took place in Illinois to make venue proper here. The motion to dismiss on grounds of improper venue is denied.

**C. Motion to Transfer Venue Pursuant to § 1404(a)**

Alternatively, the defendants request that this case be transferred to the United States Court for the District of Minnesota. If venue is proper but not convenient, a court may also transfer a case pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The moving party has the burden of establishing "that the transferee forum is clearly more convenient," based on the particular facts of the case, and the decision lies in the sound discretion of the trial judge. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). The district court has the authority to "make whatever factual findings are necessary . . . for determining where venue properly lies." *In re LimitNone, LLC*, 551 F.3d 572, 577 (7th Cir. 2008). The court may consider facts presented by way of "affidavit, deposition, stipulation, or other relevant documents." *Midwest Precision Servs., Inc. v. PTM Indus. Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983).

The requirements for transfer pursuant to § 1404(a) are less stringent than for transfer pursuant to § 1406(a). Deciding whether to transfer a case requires a "flexible and individualized analysis" based on the circumstances of a particular case. *Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (internal citations omitted). The district court has wide discretion in deciding whether transfer is appropriate. *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 974 (7th Cir. 1988); *Coffey*, 796 F.2d at 219.

In deciding whether transfer would promote convenience, courts weigh the plaintiff's choice of forum, the convenience to the parties, "the availability of and access to witnesses, . . . the location of material events and the relative ease of access to sources of proof." *Research

*Automation*, 626 F.3d at 978 (internal citations omitted). Relevant to whether the transfer is "in the interest of justice" are such factors as "docket congestion and likely speed to trial in the transferor and potential transferee forums, . . . each court's relative familiarity with the relevant law, . . . the respective desirability of resolving controversies in each locale, . . . and the relationship of each community to the controversy[.]" *Id*.

    1. Plaintiff's Choice of Forum

With respect to the present motion, the court first notes that as the plaintiff, NTI's choice of Illinois as the forum for this action carries substantial weight, particularly as Illinois is its home forum. *See Kamel v. Hill–Rom Co., Inc.*, 108 F.3d 799, 803 (7th Cir. 1997). Deference to the plaintiff's choice is rarely disturbed, "unless the balance is strongly in favor of the defendant." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003). Thus, this factor weighs strongly against transfer.

    2. Convenience of the Parties

In evaluating the convenience of the parties, courts consider "the parties' respective residences and their ability to bear the expenses of litigating in a particular forum." *Genocide Victims of Krajina v. L–3 Servs., Inc.*, 804 F. Supp. 2d 814, 826 (N.D. Ill. 2011). The defendants have not argued that keeping this litigation in Illinois would prevent them from meaningfully defending themselves. Litigation in another district is inevitably inconvenient for a party, and the court therefore views this factor as a draw.

    3. Convenience of the Witnesses

A party moving for transfer must show that the original forum is "clearly less convenient for its witnesses." *Aldridge v. Forest River, Inc.*, 436 F. Supp. 2d 959, 962 (N.D. Ill. 2006). Greater weight is given to the convenience of non-party witnesses, as a party's own employees

are "within the party's control." *Int'l Truck & Engine Corp. v. Dow–Hammond Trucks Co.*, 221 F. Supp. 2d 898, 904 (N.D. Ill. 2002). The party seeking transfer bears the burden of specifying the key witnesses to be called and summarizing their expected testimony. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167-68 (N.D. Ill. 1995). Moreover, when considering the convenience of witnesses, the court must evaluate the nature and relevance of the expected testimony instead of merely comparing the length of each party's witness list. Id. at 1168.

The defendants have not identified any non-party witnesses who are based in Minnesota and will have difficulty traveling to Illinois to participate in the litigation. Neither side has identified any non-party witnesses who are outside the subpoena power of one of the districts at issue but within the subpoena power of the other district. *See* Fed. R. Civ. P. 45(b). The court concludes that the defendants have not met their burden of showing that Illinois is a less convenient forum for their witnesses.

4. Situs of Material Events and Access to Sources of Proof

This case will likely involve evidence located in Minnesota, but largely in documentary form. "[D]ocuments and records are easily transportable (and, indeed, must be copied and delivered to the opponent no matter where the case will be litigated)[,] and their location is not a persuasive reason for transfer." *Simonoff v. Kaplan, Inc.*, No. 09 C 5017, 2010 WL 1195855, at *2 (N.D. Ill. Mar. 17, 2010) (unpublished). The defendants have identified no evidence that would be difficult to transport to Illinois. The court thus finds that evidentiary considerations do not weigh in favor of transfer.

5. Interest of Justice Factors

Finally, the court considers various factors bearing on the "interest of justice," including the courts' familiarity with the applicable law, the speed at which the case will proceed to trial,

and the desirability of resolving controversies in their locale. Here, NTI's breach-of-contract and fraud claims do not involve complex or unsettled law, and a court in either forum would be equipped to address them. As to the speed of resolution, according to federal judicial statistics available on www.uscourts.gov, the average time from filing to trial in 2012 was similar in the Northern District of Illinois (28.6 months) and the District of Minnesota (26.7 months). Furthermore, the court finds no reason why Minnesota would have a greater interest in contract and fraud claims against a Minnesota company than Illinois would have in resolving such claims brought by an Illinois resident corporation.

Having reviewed the relevant factors, the court concludes that the balance of factors does not weigh in favor of transferring this case to Minnesota. Nothing indicates that Minnesota would be a clearly more convenient forum. In the absence of compelling reasons for transfer, the court will defer to NTI's choice of forum, which is the Northern District of Illinois. *See In re Nat'l Presto Indus.*, 347 F.3d at 664. The motion to transfer venue is therefore denied.

### III. CONCLUSION

For the reasons discussed above, RepCentric and Kadlec's motion to dismiss for lack of personal jurisdiction and for improper venue is denied, as is their motion to transfer this case to the District of Minnesota. The defendants are ordered to answer the complaint or file a Rule 12(b)(6) motion within 21 days of this order.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 16, 2013