# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| REPCENTRIC SOLUTIONS and MICHAEL KADLEC, | ) | Case No. 13 C 1819 |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff National Technology, Inc. (NTI) sued defendants RepCentric Solutions ("RepCentric") and RepCentric's President, Michael Kadlec, alleging breach of contract (Count I) and common-law fraud (Count II). NTI alleges that RepCentric breached an April 26, 2012, consulting agreement with NTI ("the Agreement") and committed fraud in an effort to induce NTI to enter into the Agreement. Now before the court is the defendants' motion to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted. Both counts of the complaint are dismissed without prejudice.

## I. FACTS

The court accepts all well-pleaded allegations in NTI's complaint as true for purposes of the motion to dismiss. *See, e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). NTI is an Illinois corporation that manufactures and sells electronic circuit boards. RepCentric is a Minnesota corporation involved in technical sales and marketing. In March 2012, Kadlec contacted NTI regarding RepCentric's ability to expand NTI's business by recruiting and managing a sales network on NTI's behalf. Kadlec represented that if NTI entered into an agreement with RepCentric, RepCentric would grow NTI's business by $1.385 million

during the first year of the agreement, $4.025 million in the second year, $6.1 million in the third year, and $8.5 million in the fourth year. RepCentric and NTI entered into a written agreement in April 2012.

Pursuant to the terms of the Agreement, RepCentric Solutions was to "recruit, deploy and manage a variable-cost sales network to diversify end sectors and improve customer balance and accelerate revenue growth with increased EBITDA." (Compl. Ex. B (Agreement), ECF No. 1.) NTI, in turn, was to make monthly payments of $7,000 to RepCentric. (*Id.*) The Agreement stated that it could "be terminated, with 30 day[s] notice in writing by email or fax, by either party for any reason following the sixth month. Six month contract term is required to complete field team recruiting." (*Id.*)

NTI alleges that Kadlec and RepCentric represented to NTI that, by July 2012, RepCentric would establish a network of twelve NTI sales representatives nationally and increase NTI's business by $10,000. NTI further alleges that it purchased new manufacturing equipment and invested over $100,000 in the planned expansion of its business. In July 2012, however, three months after executing the Agreement, NTI learned that Kadlec was employed by American Standard Circuits, one of its direct competitors in the circuit-board industry. This fact had not been disclosed to NTI.

NTI terminated the Agreement in July 2012 and sought return of the money it had paid to RepCentric. NTI alleges that it fully complied with the terms of the Agreement and that RepCentric breached the Agreement by failing to recruit any sales representatives on behalf of NTI and failing to use its best efforts to recruit, deploy, and manage a sales network on behalf of NTI. Count I of the complaint alleges breach of contract against RepCentric. Count II alleges

common-law fraud against RepCentric and Kadlec, based on allegedly fraudulent representations made by Kadlec to induce NTI to enter into the Agreement with RepCentric.

## II. LEGAL STANDARDS

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of the motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

A complaint alleging fraud must further satisfy Federal Rule of Civil Procedure 9(b), pursuant to which a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." This is often described as requiring a plaintiff to plead "the who, what, when, where and how" of the alleged fraud. *United States ex rel. Garst v. LockheedMartin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003). For purposes of a motion to dismiss for failure to comply with Rule 9(b), the court takes the allegations in the complaint as true and makes all reasonable inferences in the plaintiff's favor. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

### III. ANALYSIS

**A. Breach of Contract (Count I)**

To allege a breach of contract claim in Illinois, a plaintiff must allege "the existence of a valid and enforceable contract, performance of the contract by the plaintiff, breach of the contract by the defendant, and resulting injury to the plaintiff." *Sherman v. Ryan*, 911 N.E.2d 378, 397 (Ill. App. Ct. 2009). In its complaint, NTI has identified the contract at issue, alleged that it performed under the contract, and alleged an injury. RepCentric contends, however, that NTI has failed to identify any provision of the Agreement that RepCentric breached.

In response, NTI argues that it has sufficiently alleged that RepCentric breached the terms of the Agreement. In support, NTI points to ¶¶ 11-14 of the complaint, which allege:

> 11. In July 2012, National Technology, Inc. became aware that Michael Kadlec, the President and principal of RepCentric Solutions was employed by American Standard Circuits as Executive Vice-President of Business Development.
>
> 12. American Standard Circuits is a company that is in direct competition with National Technology, Inc. in connection with the manufacture, sale and testing of circuit boards.
>
> 13. Neither Michael Kadlec nor RepCentric Solutions ever disclosed this information to National Technology, Inc.
>
> 14. RepCentric Solutions breached their agreement with National Technology, Inc. in that it failed to recruit any sales representatives or sales network on behalf of National Technology, Inc.

(Compl. ¶¶ 11-14.)

These paragraphs of the complaint, however, do not identify which specific provisions of the Agreement were allegedly breached. No provision in the Agreement required RepCentric to recruit a minimum number of sales representatives or to establish a sales network by July 2012, when NTI terminated the Agreement. The Agreement contained a six-month term during which RepCentric was to complete field team recruiting, but NTI terminated the Agreement after only three months. Furthermore, the Agreement did not include any language restricting Kadlec's

employment or requiring him to disclose his employment activities. Without identifying a provision of the Agreement that was actually breached, NTI cannot allege a claim for breach of contract. *See Burke v. 401 N. Wabash Venture, LLC*, No. 08 C 5330, 2010 WL 2330334, at *2 (N.D. Ill. June 9, 2010) ("The Court fails to see how . . . a plaintiff could state a claim for breach of contract without alleging which provision of the contract was breached."). The defendants' motion to dismiss is therefore granted as to Count I.

The defendants request that the court dismiss Count I with prejudice. But the court does not agree with defendants that it is impossible for NTI to state a claim for breach of contract. Under Illinois law, every contract carries the duty of good faith and fair dealing, absent an express disavowal by the parties of such a duty. *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 395 (7th Cir. 2003). "The purpose of this implied duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract." *Bank of America, N.A. v. Shelbourne Dev. Grp., Inc.*, 732 F. Supp. 2d 809, 823 (N.D. Ill. 2010) (internal quotations omitted). An alleged violation of the implied covenant of good faith does not support an independent tort claim, but it can be "'used as a construction aid in determining parties' intent.'" *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 673 (7th Cir. 2013) (Darrow, J., concurring) (quoting *Anderson v. Burton Assocs., Ltd.*, 578 N.E.2d 199, 203 (Ill. App. Ct. 1991)). The implied duty is typically implicated when "the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties." *LaSalle Bank Nat'l Assoc. v. Paramont Props.*, 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008) (citing *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436,

1443-45 (7th Cir. 1992)). An implied covenant of good faith and fair dealing, however, "cannot overrule or modify the express terms of a contract," and it cannot be used to read obligations into a contract that do not exist. *Northern Trust Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995).

NTI's complaint does not allege that RepCentric exercised discretion in performing certain of its obligations under the Agreement or that it acted in bad faith and in a manner contrary to the parties' reasonable expectations. In its response, moreover, NTI does not rely on a theory of good faith and fair dealing; it argues only that the defendants breached the plain terms of the Agreement. If, however, NTI believes it can allege that the defendants breached the Agreement under an implied covenant of good faith and fair dealing theory, it may file an amended complaint alleging such a theory. The court expresses no opinion as to whether a claim based on the theory will ultimately prove viable.

**B. Fraud (Count II)**

In Illinois, the elements of common-law fraud include: (1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's reliance upon the statement; and (5) damages resulting from the plaintiff's reliance on the statement. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007). As explained above, to satisfy Rule 9(b), a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake."

The defendants argue that NTI's fraud claim fails for multiple reasons. First, they argue, the complaint does not specifically identify the allegedly fraudulent statements. The defendants further argue that insofar as NTI has identified allegedly false statements made by Kadlec

regarding RepCentric's ability to expand NTI's business, those statements are representations regarding future events, not existing facts, which cannot support a fraud claim. They also argue that the statements constituted contractual promises, which cannot form the basis of a fraud claim, and that with respect to the allegation that Kadlec committed fraud by not disclosing his relationship with NTI's competitor, NTI has not pleaded the elements of a fraud by omission claim.

NTI responds that it has identified fraudulent statements in ¶¶ 4, 5, 7, and 9 and Exhibit A to the complaint. The paragraphs to which it points state:

> 4. In March 2012, Michael Kadlec, the President of RepCentric Solutions, contacted National Technology, Inc. regarding RepCentric Solutions being able to expand National Technology Inc.'s business by recruiting, deploying and managing a variable-cost sales network to diversify end sectors with improved customer balance and accelerate revenue growth with increased EBITDA.
>
> 5. Michael Kadlec represented to National Technology, Inc. that if National Technology, Inc. entered into an agreement with RepCentric Solutions, that RepCentric Solutions could grow and expand National Technology, Inc.'s business by $1.385 Million Dollars in the first year; $4.025 Million Dollars in the second year; $6.1 Million Dollars in the third year and $8.5 Million Dollars in the fourth year. See Exhibit A attached hereto.
>
> 7. Pursuant to the terms of the agreement, RepCentric Solutions was to recruit, deploy and manage a variable-cost sales network to diversify end sectors and improve customer balance and accelerate revenue growth with increased EBITDA; was to collaborate with National Technology, Inc.'s executive team to define logistics, end markets and corporate objectives; define demand on capacity, finance requirements, constraints, and expansion priorities and execute per their plan; recruit and deploy industry rep firms specialized in interconnect solutions or complementary disciplines and provide sustainable field leadership, tactical direction and corporate ambassadorship.
>
> 9. RepCentric Solutions represented to National Technology that it would, by July, 2012 establish a network of 12 sales representatives nationally and increase National Technology, Inc.'s business by $10,000.00.

(Compl. ¶¶ 4, 5, 7, and 9.) Exhibit A, allegedly presented by Kadlec to NTI as part of his efforts to induce NTI to enter into the Agreement, is entitled, "Gantt Chart and Sample Forecast." It

sets out the projected schedule for RepCentric's sales recruiting campaign and NTI's projected revenues over four years. (*Id.* at Ex. A.)

The court first notes that these alleged misrepresentations refer to promises, not existing facts. "[M]isrepresentations of intention to perform future conduct, even if made without a present intention to perform, are not actionable as fraud." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 682 (Ill. 1989). The alleged misrepresentations also include financial projections, which are generally considered to be statements of opinion, not fact. *Lagen v. Balcor Co.*, 653 N.E.2d 968, 973 (Ill. App. Ct. 1995); *see also Murphy v. Walters*, 410 N.E.2d 107, 113 (Ill. App. Ct. 1980) ("It is obvious that the Financial Projection in question here is not a statement of fact but is a calculation based on assumptions."). Thus, the misrepresentations identified by NTI cannot support a fraud claim.

Furthermore, to the extent that NTI alleges that the defendants failed to inform it that Kadlec was employed by a competitor, the complaint does not allege that the defendants made a false statement of material fact, but rather that they committed an omission. Under Illinois law, omissions can be "actionable as fraudulent concealment, but only in limited circumstances." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013). Such a claim requires

> that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff. A duty to disclose a material fact may arise out of several situations. First, if plaintiff and defendant are in a fiduciary or confidential relationship, then defendant is under a duty to disclose all material facts. Second, a duty to disclose material facts may arise out of a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff. This position of superiority may arise by reason of friendship, agency, or experience.

*Id.* at 613-14 (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996) (citations omitted)). NTI's complaint alleges no facts or circumstances to support a duty to disclose, such as a special relationship between the parties, who apparently operated at arm's length.

For these reasons, Count II is dismissed.  As it is possible that NTI may be able to re-plead a claim of fraud or fraudulent omission, the dismissal is without prejudice.

### IV. CONCLUSION

For the reasons discussed above, RepCentric and Kadlec's motion to dismiss NTI's complaint is granted in its entirety.  Counts I and II of the complaint are dismissed without prejudice.  If NTI wishes to file an amended complaint, it may do so by January 22, 2014.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED:   December 18, 2013