# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NATIONAL TECHNOLOGY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 CV 1819 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| REPCENTRIC SOLUTIONS and ) | |
| MICHAEL KADLEC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff National Technology, Inc. (NTI) sued Defendants RepCentric Solutions and its president, Michael Kadlec, alleging breach of contract (Count I) and common-law fraud (Count II). NTI alleges that RepCentric breached an April 26, 2012, consulting agreement (Agreement) with NTI and committed fraud in an effort to induce NTI to enter into the Agreement.

On December 18, 2013, the court dismissed NTI's original complaint without prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. NTI filed an amended complaint on January 22, 2014, with the same claims. Now before the court is the defendants' motion to dismiss NTI's amended complaint pursuant to Rule 12(b)(6). For the following reasons, the motion is granted and the complaint is dismissed without prejudice.

### I. FACTS

The court accepts all well-pleaded allegations in NTI's amended complaint as true for purposes of the motion to dismiss. *See, e.g.*, *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). NTI is an Illinois corporation that manufactures and sells electronic circuit boards. RepCentric is a Minnesota corporation involved in technical sales and marketing.

In March 2012, Kadlec contacted NTI regarding RepCentric's ability to expand NTI's business by recruiting and managing a sales network on NTI's behalf. Kadlec represented that if NTI entered into an agreement with RepCentric, RepCentric would grow NTI's business by $1.385 million during the first year of the agreement, $4.025 million in the second year, $6.1 million in the third year, and $8.5 million in the fourth year. RepCentric and NTI entered into a written agreement in April 2012.

Pursuant to the terms of the Agreement, RepCentric Solutions was to "recruit, deploy and manage a variable-cost sales network to diversify end sectors and improve customer balance and accelerate revenue growth with increased EBITDA." (Compl. Ex. B (Agreement), ECF No. 1.) NTI, in turn, was to make monthly payments of $7,000 to RepCentric. (*Id.*) The Agreement stated that it could "be terminated, with 30 day[s'] notice in writing by email or fax, by either party for any reason following the sixth month. Six month contract term is required to complete field team recruiting." (*Id.*)

NTI alleges that RepCentric's president, Michael Kadlec, and RepCentric orally promised to NTI that, by July 2012, RepCentric would establish a network of twelve NTI sales representatives nationally and increase NTI's business by $10,000. NTI further alleges that it purchased new manufacturing equipment and invested over $100,000 in the planned expansion of its business. In July 2012, however, three months after executing the Agreement, NTI learned that Kadlec was employed by American Standard Circuits, one of its direct competitors in the circuit-board industry. This fact had not been disclosed to NTI.

NTI terminated the Agreement in July 2012 and sought return of the money it had paid to RepCentric. NTI alleges that it fully complied with the terms of the Agreement and that RepCentric breached the Agreement by failing to recruit any sales representatives on behalf of

NTI and failing to use its best efforts to recruit, deploy, and manage a sales network on behalf of NTI. Count I of the complaint alleges breach of contract against RepCentric. Count II alleges common-law fraud against RepCentric and Kadlec, based on allegedly fraudulent representations made by Kadlec to induce NTI to enter into the Agreement with RepCentric.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of the motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

A complaint alleging fraud must further satisfy Rule 9(b) of the Federal Rules of Civil which requires that a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This is often described as requiring a plaintiff to plead "the who, what, when, where and how" of the alleged fraud. *United States ex rel. Garst v. LockheedMartin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003). For purposes of a motion to dismiss for failure to comply with Rule 9(b), the court takes the allegations in the complaint as true and makes all reasonable inferences in the plaintiff's favor. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

### III. ANALYSIS

NTI's amended complaint, like its original complaint, contains two counts against the defendants: (1) breach of contract, and (2) fraud. In its December 18, 2013 order dismissing NTI's original complaint under Rule 12(b)(6), the court ruled that NTI failed to state a claim upon which relief could be granted on either of the counts.

**A.     Materials to be considered**

As an initial matter, the court must determine which materials it should consider in deciding the motion to dismiss. NTI's amended complaint and response brief both reference the Agreement between NTI with RepCentric, stating that the Agreement is attached as Exhibit B to the amended complaint. (Am. Compl. 2, ECF No. 40; Pl.'s Resp. Br. 4, ECF No. 53). But NTI failed to attach the agreement to the amended complaint.

Generally, matters outside the complaint may not be considered on a motion to dismiss. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). An exception to this rule is that the court may consider "documents that are critical to the complaint and referred to in it." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The Seventh Circuit has stated that this "is a narrow exception aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).

To properly evaluate a motion to dismiss a breach-of-contract claim, the contract itself is critical. At oral argument on August 13, 2014, counsel for NTI stated that he had intended to attach the Agreement, which was attached to the original complaint, to the amended complaint. The court concludes that it may consider the Agreement attached to NTI's original complaint.

**B.     Count I: Breach of Contract**

The amended complaint alleges two theories under which the Defendants breached their contract with NTI: (1) By July 2012, RepCentric had not recruited any sales representatives or deployed a sales network on NTI's behalf and failed to use its best efforts; and (2) RepCentric and Kadlec breached their duty of good faith and fair dealing with NTI. The court concludes that NTI's complaint allegations are insufficient to survive a motion to dismiss.

1.     <u>Oral Representations</u>

NTI alleges that RepCentric breached its Agreement with NTI by failing to recruit any sales representatives or deploy a sales network on NTI's behalf as of July 2012, and that the Defendants failed to use their best efforts to accomplish these goals. NTI can identify no specific provision of the written Agreement that the Defendants breached. The court has reviewed the written Agreement independently and agrees with the Defendants that there are no facts pled in the complaint indicating a breach of any written provision of the parties' Agreement.

NTI's amended complaint alleges that the Defendants made and breached oral representations to NTI:

> 9.     Michael Kadlec represented to National Technology, Inc. that he would personally use his best efforts to develop and manage a network of sales representatives to grow and expand National Technology, Inc.'s business.
>
> . . .
>
> 14.     RepCentric Solutions, [sic] represented to National Technology, Inc. that it would, by July, 2012 establish a network of 12 sales representatives nationally . . . .

(Am. Compl. 2-3, ECF No. 40.) The court accepts these factual allegations as true for the purposes of a motion to dismiss. But the amended complaint does not allege that these

representations constitute provisions of a valid and enforceable contract. Accordingly, the court grants the motion to dismiss the amended complaint's breach-of-contract claim insofar as it relies on oral promises.

At oral argument, NTI indicated that it will seek leave of the court to file a second amended complaint alleging that these oral representations constituted provisions of a valid and enforceable contract. The court will review the proposed second amended complaint and determine whether it will require further briefing from the Defendants.

### 2. Duty of Good Faith and Fair Dealing

Under Illinois law, every contract carries the duty of good faith and fair dealing, absent an express disavowal by the parties of such a duty. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395 (7th Cir. 2003). The implied duty is typically implicated when "the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties." *LaSalle Bank N.A. v. Paramont Props.*, 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008) (citing *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443-45 (7th Cir. 1992)). "Parties to a contract . . . are entitled to enforce the terms of the contract to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract." *N. Trust Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995). Thus, the duty of good faith and fair dealing "is used as an aid in construing a contract . . . where a contract is susceptible to two conflicting constructions."

The amended complaint adds nothing more than vague and conclusory allegations that (1) RepCentric had discretion in performing its obligations under the contract, and (2) the Defendants somehow breached the duty of good faith and fair dealing in that they "failed to use

[their] best efforts to recruit, deploy, and manage a sales network on behalf of [NTI]." (Am. Compl. 4, ECF No. 40.) It seems to be NTI's contention that too little was done in the months leading up to July 2012 to make performance by the sixth-month date possible, but NTI neither makes this claim clear nor provides the court with any guidance as to the basis upon which this claim could be true. Without factual support or identification of how the Defendants breached their implied duty of good faith, NTI's conclusory allegations are insufficient to meet the pleading standards of *Iqbal* and *Twombly*. Accordingly, the court dismisses the claim for breach of the implied duty of good faith and fair dealing.

**C.     Count II: Fraud**

In Illinois, the elements of common-law fraud are: (1) a false statement of material fact; (2) the defendant's knowledge that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's reliance upon the statement; and (5) damages resulting from the plaintiff's reliance on the statement. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007). As explained above, to satisfy Rule 9(b), a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake."

In its amended complaint, NTI alleges that Kadlec was employed by American Standard Circuits, but that neither Kadlec nor RepCentric disclosed this fact. NTI alleges that this information would have been relevant to NTI's determination of whether to enter into the Agreement with RepCentric because American Standard Circuits is a direct competitor of NTI. Moreover, NTI alleges that Kadlec and RepCentric breached their representations that they would "use their best efforts to recruit, deploy, and manage a sales network on behalf" of NTI. (Am. Compl. 6, ECF No. 40.)

7

NTI's statement that it would "use its best efforts" is not actionable as fraud. As explained in the court's December 18 order, "[M]isrepresentations of intention to perform future conduct, even if made without a present intention to perform, are not actionable as fraud." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 682 (Ill. 1989).

As for the defendants' failure to disclose Kadlec's employment with an NTI competitor, as the court explained in its December 18 order, "the complaint does not allege that the defendants made a false statement of material fact, but rather that they committed an omission." (Mem. Op. & Order 8, ECF No. 39.) These omissions are actionable as fraudulent concealment only under limited circumstances. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013). Such a claim would require either (1) a fiduciary or confidential relationship between the parties, or (2) "a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Id.* (internal quotation marks omitted). The standard for such a special trust relationship is high, and courts "have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). To find a special trust relationship, the court must find that the defendant is "clearly dominant, either because of superior knowledge of the matter derived from . . . overmastering influence on the other side, or from weakness, dependence, or trust justifiably reposed on the other side." *Id.* at 572 (omission in original) (internal quotation marks omitted). "In short, the defendant accused of fraudulent concealment must exercise 'overwhelming influence' over the plaintiff." *Id.* (quoting *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 14 (Ill. App. Ct. 2001)).

NTI fails to show a special trust relationship between NTI and the defendants. The amended complaint states that NTI placed its trust in the defendants' hands because defendants

8

represented "that they had significant expertise and experience in the area of developing and managing sales networks specializing in North America's Interconnect Electronics Industry . . . ." (Am. Compl. 6, ECF No. 40.) But, as noted in the court's previous opinion, NTI and the defendants "apparently operated at arm's length." (Mem. Op. & Order 8, ECF No. 39.) A mere claim that the defendants touted their expertise is insufficient to suggest that the defendants had "overwhelming influence" over NTI. *See Go For It, Inc. v. Aircraft Sales Corp.*, No. 02 C 6158, 2003 WL 21504600, at *2 (N.D. Ill. June 27, 2003) ("[A] slightly dominant business position does not operate to turn a formal, contractual relationship into a confidential or fiduciary relationship."), *cited with approval in Wigod*, 673 F.3d at 572. Because NTI cannot show a special trust relationship, it cannot successfully proceed on its claim based on an omission as a false statement of material fact.

Moreover, even if the court were to treat the omission as a false statement of material fact, NTI fails to explain how that omission caused NTI to incur damages as a result of its reliance Kadlec's omission. The complaint does not plead facts indicating that Kadlec's purported conflict of interest actually affected the defendants' performance on the Agreement.[1] NTI's complaint fails to state a claim for fraud based on the defendants' purported failure to disclose Kadlec's employment with an NTI competitor.

The court concludes that NTI's amended complaint fails to state a claim for fraud. Accordingly, the court grants the defendants' motion to dismiss Count II of the complaint pursuant to Rule 12(b)(6).

---

[1] Perhaps NTI's theory is that Kadlec's conflict of interest explains why Kadlec and RepCentric never intended to perform their obligations under the contract. *See Central Ill. Pub. Serv. Co. v. Allianz Underwriters Ins. Co.*, 614 N.E.2d 34, 41 (Ill. App. Ct. 1993) ("When one party commits fraud in the execution of a contract, the other party has an election of remedies. He may seek rescission or damages in either contract or tort."). But NTI's amended complaint does not state that theory or explain why it may proceed under a theory of fraudulent omission.

## IV. Conclusion

Defendants' motion to dismiss NTI's amended complaint is granted and the complaint is dismissed without prejudice. If NTI wishes to further amend its complaint, it must file a motion for leave to file its second amended complaint, along with its proposed second amended complaint, by September 11, 2014. Failure to do so will result in dismissal of the case with prejudice.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 15, 2014